1998 ND App 8

**Martin WISHNATSKY, Plaintiff and Appellant,**

v.

**David W. HUEY, Defendant and Appellee.**

**Civil No. 980067CA.**

Court of Appeals of North Dakota.

Sept. 15, 1998.

See also, 1997 ND 35, 560 N.W.2d 878.

Martin Wishnatsky, Fargo, pro se.

Andrew Moraghan, Assistant Attorney General, Attorney General's Office, Bismarck, for defendant and appellee.

PER CURIAM.

[¶ 1] Martin Wishnatsky appealed a summary judgment dismissing his battery action against David W. Huey, and an order denying his motion for an altered judgment. We conclude, as a matter of law, that no battery occurred, and we affirm the judgment and the order.

[¶ 2] On January 10, 1996, Huey, an assistant attorney general, was engaged in a conversation with attorney Peter B. Crary in Crary's office. Without knocking or announcing his entry, Wishnatsky, who performs paralegal work for Crary, attempted to enter the office. Huey pushed the door closed, thereby pushing Wishnatsky back into the hall. Wishnatsky reentered the office and Huey left.

[¶ 3] Wishnatsky brought an action against Huey, seeking damages for battery.[1] Huey moved for summary judgment of dismissal. The trial court granted Huey's motion and a judgment of dismissal was entered. Wishnatsky moved to alter the judgment. The trial court denied Wishnatsky's motion.

[¶ 4] Wishnatsky appealed, contending the evidence he submitted in response to Huey's motion for summary judgment satisfies the elements of a battery claim and the trial court erred in granting Huey's motion. Wishnatsky also contends Huey is not entitled to prosecutorial or statutory immunity.

[¶ 5] Summary judgment is a procedural device for the prompt and expeditious disposition of a controversy without trial if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving factual disputes would not alter the result. *Perry Center, Inc. v. Heitkamp*, 1998 ND 78, ¶ 12, 576 N.W.2d 505. "In considering a motion for summary judgment, a court must view the evidence in the light most favorable to the party opposing the motion, who must be given the benefit of all favorable inferences which reasonably can be drawn from the evidence." *Mougey Farms v. Kaspari*, 1998 ND 118, ¶ 12, 579 N.W.2d 583. "Disputes of fact become questions of law if reasonable persons can draw only one conclusion from the evidence." *Id.* In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the nonmoving party to determine if the trial court properly granted summary judgment as a matter of law. *Tuhy v. Schlabsz*, 1998 ND 31, ¶ 5, 574 N.W.2d 823. On a defendant's motion for summary judgment, the question for the court is "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[¶ 6] "In its original conception [battery] meant the infliction of physical injury." VIII Sir William Holdsworth, *A History of English Law* 422 (2d Impression 1973). By the Eighteenth Century, the requirement of an actual physical injury had been eliminated:

At Nisi Prius, upon evidence in trespass for assault and battery, Holt, C.J. declared,

1. That the least touching of another in anger is a battery. 2. If two or more meet in a narrow passage, and without any violence or design of harm, the one touches the other gently, it is no battery. 3. If any of them use violence against the other, to force his way in a rude inordinate manner, it is a battery; or any struggle about the passage, to that degree as may do hurt, is a battery. Vid.Bro.Tresp. 236. 7 E. 4, 26. 22 Ass. 60. 3 H. 4, 9.

*Cole v. Turner*, Pasch. 3 Ann., 6 Mod. 149, 90 Eng.Rep. 958 (1704). Blackstone explained:

The least touching of another's person willfully, or in anger, is a battery; for the law cannot draw the line between different de-

---

1. Wishnatsky also sought a disorderly conduct restraining order under N.D.C.C. Ch. 12.1–31.2 against Huey, based on the January 10, 1996, incident, and another on January 25, 1996. In affirming a judgment dismissing Wishnatsky's petition, our Supreme Court concluded "Huey's conduct did not rise to the level of intrusive behavior which would warrant a reasonable person to conclude Huey committed the offense of disorderly conduct." *Wishnatsky v. Huey*, 1997 ND 35, ¶ 15, 560 N.W.2d 878.

grees of violence, and therefore totally prohibits the first and lowest stage of it: every man's person being sacred, and no other having a right to meddle with it, in any the slightest manner.

3 William Blackstone, *Commentaries* *120. On the other hand, "in a crowded world, a certain amount of personal contact is inevitable, and must be accepted." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 9, at 42 (5th ed.1984).

[¶ 7] The American Law Institute has balanced the interest in unwanted contacts and the inevitable contacts in a crowded world in *Restatement (Second) of Torts* §§ 18, 19 (1965):

18.  Battery: Offensive Contact

(1) An actor is subject to liability to another for battery if

(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

(b) an offensive contact with the person of the other directly or indirectly results.

(2) An act which is not done with the intention stated in Subsection (1,a) does not make the actor liable to the other for a mere offensive contact with the other's person although the act involves an unreasonable risk of inflicting it and, therefore, would be negligent or reckless if the risk threatened bodily harm.

. . . .

19.  What Constitutes Offensive Contact

A bodily contact is offensive if it offends a reasonable sense of personal dignity.

Comment *c* to § 18 notes that the contact need not be "directly caused by some act of the actor" and also notes that "the essence of the plaintiff's grievance consists in the offense to the dignity involved in the unpermitted and intentional invasion of the inviolability of his person and not in any physical harm done to his body." Comment *a* to § 19 explains what kind of conduct offends a reasonable sense of personal dignity:

In order that a contact be offensive to a reasonable sense of personal dignity, it must be one which would offend the ordinary person and as such one not unduly sensitive as to his personal dignity. It must, therefore, be a contact which is un-

warranted by the social usages prevalent at the time and place at which it is inflicted.

[¶ 8] Huey moved for summary judgment of dismissal, because, among other things, "as a matter of law, a battery did not occur on January 10, 1996." Huey supported the motion with his affidavit stating in part:

8.  That Attorney Crary and I had settled into a serious discussion about the case and had established a good rapport when the door to his office suddenly swung open without a knock. An unidentified individual carrying some papers then strode in unannounced. I had not been told that anyone would be entering Attorney Crary's office during the private meeting. . . . I subsequently learned that the individual's name is Martin Wishnatsky.

[¶ 9] Wishnatsky responded to Huey's motion for summary judgment with an affidavit of Crary and with his own affidavit stating in part:

1.  I am a born-again Christian and cultivate holiness in my life. [A]s a result I am very sensitive to evil spirits and am greatly disturbed by the demonic. However, in Christ there is victory.

2.  On January 9, 1996, Mr. David Huey of the North Dakota Attorney General's office, visited the ministry where I was working at 16 Broadway in Fargo, North Dakota with an ex parte court order.

3.  The following morning I entered the office of Peter Crary, an attorney for whom I do paralegal work, to give him certain papers that had been requested. Mr. Crary was speaking with Mr. David Huey at the time. As I began to enter the office Mr Huey threw his body weight against the door and forced me out into the hall. I had not said a word to him. At the same time, he snarled: "You get out of here." This was very shocking and frightening to me. In all the time I have been working as an aide to Mr. Crary, I have never been physically assaulted or spoken to in a harsh and brutal manner. My blood pressure began to rise, my heart beat accelerated and I felt waves of fear in the pit of my stomach. My hands began to shake and my body to tremble. Composing myself, I reentered the office, where-

upon Mr. Huey began a half-demented tirade against me and stormed out into the hall. I looked at Mr. Crary in wonder.

[¶ 10] We certainly agree with the Supreme Court's determination that when Wishnatsky attempted to enter the room in which Huey was conversing with Crary, "Huey apparently reacted in a rude and abrupt manner in attempting to exclude Wishnatsky from that conversation." *Wishnatsky v. Huey*, 1997 ND 35, ¶ 15, 560 N.W.2d 878. As a matter of law, however, Huey's "rude and abrupt" conduct did not rise to the level of battery.

[¶ 11] The evidence presented to the trial court demonstrates Wishnatsky is "unduly sensitive as to his personal dignity." *Restatement (Second) of Torts* § 19 cmt. a (1965). Without knocking or otherwise announcing his intentions, Wishnatsky opened the door to the office in which Huey and Crary were having a private conversation and attempted to enter. Huey closed the door opened by Wishnatsky, thereby stopping Wishnatsky's forward progress and pushing him back into the hall. The bodily contact was momentary, indirect, and incidental. Viewing the evidence in the light most favorable to Wishnatsky, and giving him the benefit of all favorable inferences which can reasonably be drawn from the evidence, we conclude Huey's conduct in response to Wishnatsky's intrusion into his private conversation with Crary, while "rude and abrupt," would not "be offensive to a reasonable sense of personal dignity." In short, an "ordinary person . . . not unduly sensitive as to his personal dignity" intruding upon a private conversation in Wishnatsky's manner would not have been offended by Huey's response to the intrusion. We conclude that Huey's conduct did not constitute an offensive-contact-battery, as a matter of law, and the trial court did not err in granting Huey's motion for summary judgment dismissing Wishnatsky's action.

[¶ 12] Because we have concluded there was no battery as a matter of law, we need not address the immunity issues Wishnatsky has raised. We need not consider questions, the answers to which are unnecessary to the determination of the case. *See, e.g., Kaler v. Kraemer*, 1998 ND 56, ¶ 10, 574 N.W.2d 588; *Hospital Servs., Inc. v. Brooks*, 229 N.W.2d 69, 71 (N.D.1975).

[¶ 13] Affirmed.

[¶ 14] HOBERG, C.J., WILLIAM F. HODNY, Surrogate Judge, and DEBBIE G. KLEVEN, District Judge, concur.