2003 ND 154

Debbie **IGLEHART**, as the surviving Spouse of Joseph Iglehart, Deceased, for herself and on behalf of Ariel Iglehart, the minor Daughter of Joseph Iglehart, and as Personal Representative of the Estate of Joseph Iglehart, deceased, Plaintiff and Appellant,

v.

James P. **IGLEHART**, Defendant and Appellee.

No. 20030063.

Supreme Court of North Dakota.

Oct. 23, 2003.

Steven L. Latham, Wheeler Wolf, Bismarck, ND, for plaintiff and appellant.

Jay H. Fiedler, Pearson Christensen, Grand Forks, ND, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Debbie Iglehart appealed from summary judgment dismissing her negligence action arising out of Joseph Iglehart's death. We affirm.

I

[¶ 2] Joseph Iglehart ("decedent") suffered severe burns and died of asphyxiation after he was buried by rotten corn inside a Harvestore silo on April 26, 1999.

His wife Debbie Iglehart brought a wrongful death action against James Iglehart, decedent's father and business partner, for herself and on behalf of the couple's daughter. She also brought a survival action as the personal representative of decedent's estate. Debbie Iglehart alleged decedent's death was caused by his father's negligence, which included but was not limited to failing to warn decedent of the dangers of the work he was performing, failing to provide a safe workplace and equipment, and negligently selecting the manner of work he was performing.

[¶ 3] Decedent began working on his father's farm when he was five years old. His chores included cleaning out the Harvestore silos located on the farm. After he attended diesel mechanic school, he returned to the farm. Father and son formed several partnerships and joint ventures. J & J Cattle, LLP, was one of the partnerships. James Iglehart was the managing partner and all net profits and losses were allocated in proportion to each partner's interest.

[¶ 4] James Iglehart purchased the Harvestore silo in which decedent died from Laverne Schaefer of Bobcat of Mandan in 1972. The silo contained a warning above the approximately twenty inch by thirty inch door, which stated: "Danger. Do not enter. Not enough oxygen to support life." The door was located about three feet above the ground. In 1998, decedent and James Iglehart began using an auger to remove corn from the silo in order to feed their cattle. The unloader in the silo was used to bring corn to the auger, and the auger was used to load it into a wagon. However, that winter the unloader quit working so they simply opened the silo door and let the corn run out. As a result, the silo developed a dent because corn began to rot and stick to the inside of the silo. Decedent discussed this

problem with Schaefer, and Schaefer warned him not to enter the silo because the material might fall on him.

[¶ 5] Decedent told his brother Tom Iglehart about the dent. Tom Iglehart subsequently looked inside the silo and saw corn stuck on the sides. He stated in a deposition that what he saw "spooked [him] bad" and he warned decedent not to enter the silo. At a family wedding the weekend before decedent died, he told his brother-in-law Christopher Steckler that he was going to remove the rotten corn stuck to the side of the silo. According to Steckler's deposition testimony, Steckler suggested alternative methods to remove the corn and he and others told him not to go into the silo.

[¶ 6] A few days before his death, decedent had a conversation regarding the silo with John Iglehart and John Iglehart's daughter, Kathy Kovarik. In his affidavit, John Iglehart stated he told decedent it was dangerous to go into the silo. Kathy Kovarik's affidavit stated decedent was well aware of the dangers of entering the silo. Decedent's sister, Jean Graeber, also stated in an affidavit that he knew the dangers of entering a silo because, in the past, he had warned her not to go into a silo.

[¶ 7] Decedent died on April 26, 1999. That afternoon he intended to go to the bank, but his wife told him it was unlikely anyone at the bank would see him so late in the afternoon. Instead, he went to the farm around 3:15 p.m. He was not home by supper that evening. His body was found buried in the silage with his leg sticking out toward the door of the silo. No tools of any kind were found with him, and he had not spoken to his father that day. His father had recently purchased a "grain vac," which could have been used to clean out the rotten corn. However, on the day decedent died, the grain vac was still locat-

ed at the farm where it was purchased, approximately six miles away.

[¶ 8] Based on these facts, James Iglehart moved for summary judgment. The district court granted his motion and dismissed the case with prejudice because there were no issues of material fact and he was entitled to judgment as a matter of law.

## II

[¶ 9] Whether summary judgment was properly granted is "a question of law which we review de novo on the entire record." *Wahl v. Country Mut. Ins. Co.*, 2002 ND 42, ¶ 6, 640 N.W.2d 689.

Summary judgment is a procedural device for promptly and expeditiously disposing of an action without a trial if either party is entitled to judgment as a matter of law and no dispute exists as to either the material facts or the reasonable inferences to be drawn from undisputed facts, or resolving the factual disputes will not alter the result. Issues of fact may become questions of law if reasonable persons could reach only one conclusion from the facts. Summary judgment is appropriate against parties who fail to establish the existence of a factual dispute on an essential element of their claim and on which they will bear the burden of proof at trial.

*Hilton v. North Dakota Educ. Ass'n*, 2002 ND 209, ¶ 23, 655 N.W.2d 60 (citations omitted). The evidence is reviewed in a light most favorable to the party opposing the motion, and that party receives the benefit of all inferences that can reasonably be drawn from the evidence. *Trinity Health v. North Central Emergency Services*, 2003 ND 86, ¶ 15, 662 N.W.2d 280.

[¶ 10] This Court has stated:

Although the party seeking summary judgment has the burden of showing that there is no genuine issue of material fact, the party resisting the motion may not simply rely upon the pleadings. Nor may the opposing party rely upon unsupported, conclusory allegations. The resisting party must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact.

In summary judgment proceedings, neither the trial court nor the appellate court has any obligation, duty, or responsibility to search the record for evidence opposing the motion for summary judgment. The opposing party must also explain the connection between the factual assertions and the legal theories in the case, and cannot leave to the court the chore of divining what facts are relevant or why facts are relevant, let alone material, to the claim for relief.

*Anderson v. Meyer Broad. Co.*, 2001 ND 125, ¶ 14, 630 N.W.2d 46 (quoting *Peterson v. Zerr*, 477 N.W.2d 230, 234 (N.D.1991) (citations omitted)). Additionally, mere speculation is not enough to defeat a motion for summary judgment. *BTA Oil Producers v. MDU Res. Group, Inc.*, 2002 ND 55, ¶ 49, 642 N.W.2d 873. A scintilla of evidence is not sufficient to support a claim, there must be enough evidence for a reasonable jury to find for the plaintiff. *Wishnatsky v. Huey*, 1998 ND APP 8, ¶ 5, 584 N.W.2d 859 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[¶ 11] Actionable negligence consists of a duty, breach, and an injury that was proximately caused by the breach. *Diegel v. City of West Fargo*, 546

N.W.2d 367, 370 (N.D.1996). Negligence actions are generally not appropriate for summary judgment because they involve issues of fact. *Kimball v. Landeis*, 2002 ND 162, ¶ 7, 652 N.W.2d 330. However, the existence of a duty is usually a preliminary question of law, unless it depends on facts that must be determined by the fact finder. *Diegel*, at 370 (citing *Crowston v. Goodyear Tire & Rubber Co.*, 521 N.W.2d 401, 406 (N.D.1994) and *Rawlings v. Fruhwirth*, 455 N.W.2d 574, 577 (N.D.1990)).

### III

[¶ 12] Debbie Iglehart asserts several theories regarding a duty James Iglehart owed to decedent. She claims he owed a duty similar to that between an employer and an employee, a lessor and a lessee, and an owner of land and an entrant. There is scant, if any, evidence of the several theories of relationships she advances. Perhaps the most logical relationship would be that of lessor-lessee. However, "[g]enerally, the common law imposes upon landlords no liability to their tenants or other entrants for injuries due to dangerous conditions on the leased premises." *Bellemare v. Gateway Builders, Inc.*, 420 N.W.2d 733, 740 (N.D. 1988) (applying the common law to an agricultural lease).[1]

> Except as stated in §§ 357 and 360–362, a lessor of land is not subject to liability to his lessee or others upon the land with the consent of the lessee or sublessee for physical harm caused by any dangerous condition which comes into existence after the lessee has taken possession.

Restatement (Second) of Torts § 355 (1965); *see also Avron v. Plummer*, 132 N.W.2d 198, 207 (N.D.1964) (quoting Restatement of the Law, Torts, § 355 (1948 Supp.)). Sections 360–362 deal with partial leases of land and negligent repairs by the lessor and do not appear to apply to this case. Section 357 states:

> A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession if
>
> (a) the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, and
>
> (b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented, and
>
> (c) the lessor fails to exercise reasonable care to perform his contract.

Therefore, if James Iglehart leased the silo to the partnership or to decedent, he could, under these facts, have had a duty to repair it if he contracted to do so.

[¶ 13] However, Debbie Iglehart does not point to any evidence from which we can conclude James Iglehart owed decedent a duty as a lessor of the silo, and an examination of the record reveals no evidence he owed a duty to repair the silo. The record does not contain any lease agreement regarding the silo. There are no facts indicating he leased the silo to the partnership and covenanted to repair it. Accordingly, we conclude he owed no duty to decedent as a lessor of the silo.

### IV

[¶ 14] Employers, including agricultural employers, have a duty to exercise ordinary care to furnish employees with a reasonably safe workplace and tools. *Jo-*

---

**1.** Unlike an agricultural lease, landlords of residential dwelling units must "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." N.D.C.C. § 47–16–13.1(1)(b).

*hansen v. Anderson,* 555 N.W.2d 588, 591–92 (N.D.1996). An employer is "[a] person who controls and directs a worker under an express or implied contract of hire and who pays the worker's salary or wages." Black's Law Dictionary 544 (7th ed.1999). Debbie Iglehart's contention that James Iglehart owed decedent a duty similar to the duty owed to an employee by an employer is without basis in the record.

[¶ 15] James Iglehart was the managing partner of the cattle partnership, had the exclusive right to manage its affairs, and had possession of the partnership books and checking account. This does not make him decedent's employer. There is no evidence indicating decedent considered himself an employee. Nothing in the record indicates he took orders from James Iglehart or received a salary for his work. He contributed assets to the partnership, and the partnership net profits and losses were allocated in proportion to each partner's capital account. Additionally, although James Iglehart had many powers as the managing partner, there were limitations on those powers that do not occur in an employer-employee relationship. Under these facts, James Iglehart was not decedent's employer. Therefore, he did not owe decedent the duties, such as providing a safe workplace and tools, that arise out of an employer-employee relationship.

## V

[¶ 16] Although James Iglehart did not owe decedent any duty as an employer or a lessor, we consider whether he owed a duty as the owner of the silo.

Under premises liability law, a property owner must have had control over the property where an injury occurred in order to find the owner owed a duty to an injured party.... Landowners owe a general duty to lawful entrants to maintain their property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to another, the seriousness of the injury, and the burden of avoiding the risk.

*Doan v. City of Bismarck,* 2001 ND 152, ¶ 13, 632 N.W.2d 815 (citations omitted). This Court no longer recognizes separate duties to lawful entrants depending on their status upon the land. *O'Leary v. Coenen,* 251 N.W.2d 746, 751 (N.D.1977) (applying ordinary negligence principles to both licensees and invitees). However, the likelihood of the visitor's entry is still useful to determine the "likelihood of injury to him, and the extent of the interest which must be sacrificed to avoid the risk of injury." *Id.* at 752. It is clear from the record decedent was a lawful entrant on his father's property.

[¶ 17] Debbie Iglehart argues the trial court improperly concluded decedent assumed the risk. In its order for summary judgment, the trial court concluded:

James Iglehart had no duty to warn Joseph Iglehart of dangers which were known to him. The Court further finds that Joseph Iglehart knew the risks resulting from his actions, voluntarily encountered the same, and assumed the risk thereof and, therefore, Joseph Iglehart's actions were the proximate cause of his own death.

We do not interpret this as an analysis of assumption of the risk. Assumption of the risk is no longer an affirmative defense in North Dakota, but is one part of the analysis in determining comparative fault. *Wentz v. Deseth,* 221 N.W.2d 101, 104–05 (N.D.1974); *see also* N.D.C.C. § 9–10–06; 1973 N.D. Sess. Laws ch. 78, § 3. Rather, the facts are more akin to a situation involving the issue of a duty to warn of known and obvious dangers. Where con-

ditions are known and obvious, they "cannot be viewed as pitfalls, traps or snares that would make conditions dangerous for a person exercising ordinary care." *Sternberger v. City of Williston*, 556 N.W.2d 288, 290 (N.D.1996) (citing Restatement (Second) of Torts § 343A (1965)). Additionally, "[a] 'duty to warn is predicated upon the understanding that individuals who have superior knowledge of dangers posed by a hazard must warn those who lack similar knowledge; when an individual is already aware of danger, a warning is not necessary.' " *Collette v. Clausen*, 2003 ND 129, ¶ 26, 667 N.W.2d 617 (quoting 65 C.J.S. Negligence § 74 (2000)); *see also Gullickson v. Torkelson Bros., Inc.*, 1999 ND 155, ¶ 8, 598 N.W.2d 503 (stating an "employer need not, however, warn of dangers known to the employee or obvious to and fully appreciated by the employee"). Decedent was clearly aware of the danger in this case because several people had warned him not to enter the silo. Therefore, the condition of the silo was a known danger that James Iglehart had no duty to warn decedent about.

[¶ 18] We do not hold that a warning is always sufficient to absolve a landowner of liability. However, where it is clear an injured person completely understood the dangers involved and still voluntarily encountered them, we conclude a jury could not reasonably find a landowner's negligence caused the injuries. *See Wishnatsky*, 1998 ND APP 8, ¶ 5, 584 N.W.2d 859 (stating summary judgment is appropriate where a reasonable jury could reach only one conclusion); *see also Olstad v. Olstad*, 126 N.W.2d 795, 797 (N.D.1964) ("Clearly the defendant could not be held liable for plaintiff's injury while doing the work in a dangerous manner when the plaintiff deliberately chose to do the work in the manner in which he was performing it when the accident occurred").

## VI

[¶ 19] In response to the summary judgment motion, Debbie Iglehart did not provide competent, admissible evidence establishing a duty or showing negligence by James Iglehart. She provided information regarding her husband's childhood, alleging he was not in the silo when he was killed, claiming it could be inferred he could not comprehend the silo's ownership manual, stating James Iglehart was aware of decedent's plans to remove the rotten corn, and claiming James Iglehart had exclusive authority to hire someone to repair the silo. She does not explain why her husband's childhood is relevant here. It may be true he entered the silo as a child, but how this is material or relevant to what occurred years later and after he had gone to college and become an experienced farm worker is not explained.

[¶ 20] Debbie Iglehart claims summary judgment should not have been granted because it was not clear whether decedent was inside the silo when he died. She argues his body position indicated he was not in the silo when he was killed. She does not explain, however, how this would have any effect on a duty owed by James Iglehart or how it could establish he was negligent. She contends it could be inferred decedent could not comprehend the silo's ownership manual at the time the silo was built because he was too young. However, he was obviously aware of the dangers of working in and around silos and she did not present any evidence regarding how the ownership manual would have assisted him.

[¶ 21] Debbie Iglehart argues James Iglehart knew decedent planned to remove the corn and had the exclusive ability to hire someone to repair it. She does not explain why this would establish a duty owed by James Iglehart to decedent.

The mere fact that James Iglehart knew decedent was planning to remove the rotten corn at some future date does not establish a duty or negligence. The fact decedent originally planned to go to the bank instead of fix the silo indicates the repairs were not urgent or, at the very least, did not have to be performed that day. Decedent could have asked James Iglehart to hire someone, he could have chosen not to try to fix the problem himself, or he could have used the grain vac which was located six miles away.

[¶ 22] As Debbie Iglehart contends, there is a rebuttable presumption a decedent exercised due care for his own safety and life. *Quam v. Wengert*, 86 N.W.2d 741, 746–47 (N.D.1957); *Smith v. Knutson*, 76 N.D. 375, 36 N.W.2d 323, 329 (1949). Although James Iglehart presented evidence which may have rebutted this presumption, whether it has been rebutted is irrelevant because she still has the burden to prove he was negligent, not merely that decedent exercised due care. *See Haga v. Cook*, 145 N.W.2d 888, 891 (N.D. 1966) (stating a "defendant's negligence never is presumed merely from proof of the accident, but must be affirmatively established").

[¶ 23] None of Debbie Iglehart's claims explain why, if they are true, James Igelhart would be liable for decedent's death. It is not this Court's responsibility to determine why facts may be relevant or material. *Anderson*, 2001 ND 125, ¶ 14, 630 N.W.2d 46. Whether James Iglehart owed decedent a duty is a question of law. *Diegel*, 546 N.W.2d at 370. Although a question of law may depend on facts that must be determined by a fact finder, this is not the case here. *See id.* There have been no facts presented which would allow a jury to reasonably find either James Iglehart owed decedent a duty or James Iglehart was negligent. *See Clausen*, 2003

ND 129, ¶ 8, 667 N.W.2d 617 ("When no pertinent evidence on an essential element is presented to the district court in resistance to a motion for summary judgment, it is presumed no such evidence exists"). Therefore, we affirm the district court's summary judgment dismissing Debbie Iglehart's claims with prejudice.

[¶ 24] DALE V. SANDSTROM, CAROL RONNING KAPSNER, WILLIAM A. NEUMANN and MARY MUEHLEN MARING, JJ., concur.