MANNING ET AL., APPELLANTS AND CROSS-APPELLEES, *v.* WILMOT ET AL., APPELLEES AND CROSS-APPELLANTS.

(No. CA85-03-024 — Decided December 9, 1985.)

*Stephen J. Brewer,* for appellants.
*Steven M. Runge,* for appellees.

JONES, J. At 8:30 p.m., on the evening of September 5, 1983, approximately one hour after dark, ten-year-old Mathew Wilmot was driving his Honda three-wheeled, all-terrain vehicle ("ATV") on the westbound shoulder of Trenton-Franklin Road. Young Wilmot's cousin was riding as a passenger on the ATV. James Manning was proceeding in the same direction on Trenton-Franklin Road, riding his Harley-Davidson motorcycle. An accident occurred when Manning's motorcycle struck the back of Wilmot's ATV. Manning suffered physical injuries and substantial property damage to his motorcycle. Wilmot and his passenger escaped serious injury and the ATV only sustained damage to a fender.

Manning and his wife, Gretchen, filed suit against Mathew and his father,

Charles "Bud" Wilmot, for personal injuries, property damage and loss of consortium. The complaint alleged negligence on the part of Mathew in the operation of the ATV and negligent entrustment on the part of the elder Wilmot in giving the vehicle to his son. The Wilmots filed an answer and counterclaim seeking to recover for the damage to the ATV.

On November 2, 1984, Bud Wilmot filed a motion for summary judgment with supporting affidavits. The Mannings filed a memorandum without the benefit of affidavits in opposition to the summary judgment motion. In addition, the Wilmots' depositions were taken and submitted to the court for consideration. The trial court rendered an opinion in which it found no negligent entrustment on the part of Bud Wilmot and sustained his motion for summary judgment.

Trial proceeded against Mathew and a jury returned a general verdict finding Mathew negligent and awarding damages to James and Gretchen Manning in amounts of $124,000 and $1,000, respectively. Judgment entries reflecting the jury verdict in favor of the Mannings and summary judgment for Bud Wilmot were filed by the trial court on March 4, 1985. The Mannings appealed the summary judgment granted to Bud Wilmot. The Wilmots, in turn, cross-appealed the judgment rendered against young Mathew.

The Mannings' appeal consists of one assignment of error which argues the existence of a genuine issue of material fact which precludes the granting of summary judgment. The Mannings contend that there are genuine issues concerning whether Bud Wilmot gave his son permission to ride the ATV on the date of the accident and whether Wilmot knew of his son's incompetence or inability to safely operate the ATV.

Generally, an owner of a vehicle may be held liable in negligence for injuries to a third person resulting from the operation of the vehicle by an inexperienced or incompetent driver if the owner knowingly entrusts its operation to such a driver. *Gulla* v. *Straus* (1950), 154 Ohio St. 193 [42 O.O. 261], paragraph three of the syllabus; *Ohio Fair Plan Underwriting Assn.* v. *Goldstein* (1982), 2 Ohio App. 3d 313, 314. Such liability on the part of the owner is usually confined to cases where the owner entrusts the vehicle to one whose appearance or conduct is such as to indicate his incompetency or inability to operate the vehicle with due care. *Gulla, supra.*

The depositions and affidavits of the Wilmots and the affidavit of Mathew's grandmother were the only evidentiary materials before the court. From these materials, it is all too apparent that Mathew, who received the ATV for his birthday approximately one month before the accident, was repeatedly told by his father to stay off streets and roads and not to drive the ATV in the dark. Mathew's use of the ATV was confined to the Wilmot yard and an occasional ride in a field across the street from the Wilmot residence, but only when Bud Wilmot was present to watch for traffic and supervise Mathew's crossing the street. Bud Wilmot did state that Mathew was generally permitted to ride the ATV at any time so long as the use conformed to these restrictions and limitations.

On the date of the accident, Bud Wilmot was returning from a trip to Illinois. It was at this time that Mathew, without the express permission to do so, first drove the ATV on a road. Mathew was returning from a bike track and was taking his cousin home when the accident occurred. Mathew had originally gone to the bike track via a railroad trestle thereby eliminating the need to take the ATV on the road. However, Mathew decided to use the road on the return trip since he feared crossing the trestle in the dark.

The evidentiary materials also indicate that Mathew was given instruc-

tions in the safe operation of the ATV by the dealer at the time of its purchase. Together, Mathew and his father also read and discussed the ATV's owner manual concerning the safe operation of the vehicle. There was also evidence that the ATV in question was designed for an individual weighing no more than eighty pounds. Bud Wilmot had always known his son to be a safe operator of the ATV during the time since its purchase.

We feel that the uncontroverted evidence demonstrates that Mathew's appearance and conduct would not have indicated to his father that the boy was incompetent or otherwise unable to operate the ATV with due care. The record shows that significant attention was given to Mathew's instruction and education in the safe and careful operation of the ATV. Until the accident, Mathew had always obeyed his father's instructions to keep the ATV off the roads. The ATV was obviously designed for use by a person of Mathew's size and age group and could be expected to be operated by someone possessing Mathew's level of maturity and experience. Thus, there is no genuine issue concerning whether Bud Wilmot had actual knowledge that his son was incompetent or unable to safely operate the ATV.

In those situations where the incompetency of the entrustee is not apparent to the vehicle owner at the time of the entrustment:

"* * * it must be affirmatively shown that the entruster had at that time knowledge of such facts and circumstances relating to the incompetency of the entrustee to operate the motor vehicle as would charge the entruster with knowledge of such incompetency. * * *" *Gulla, supra,* at 199-200. In other words, if actual knowledge of the user's incompetency is lacking, are there facts and circumstances from which the owner should have known of the user's incompetency? See *Williamson* v.

*Eclipse Motor Lines, Inc.* (1945), 145 Ohio St. 467 [31 O.O. 156]; *Rogers* v. *Kazee* (1983), 10 Ohio App. 3d 139, 141.

Mathew stated in his deposition that he had one or two other "not real bad" accidents which did not cause any damage to the ATV. These occurred when he was driving up a hill "trying to do a wheelee and fell backwards." Bud Wilmot stated that he did not know of these accidents, and there is nothing to indicate that Mathew ever told his father about these minor mishaps. There is nothing in the record which would support a finding that Bud Wilmot should have been aware of or known of his son's inability to safely operate the ATV. Furthermore, there is nothing to suggest that ten-year-olds in general were incompetent or otherwise unable to safely operate the type of ATV owned by the Wilmots.

In further support of the negligent entrustment argument, the Mannings cited *Honea* v. *Bradford* (1979), 39 N.C. App. 652, 251 S.E.2d 720. In that case, the appellate court upheld a verdict granted to a plaintiff who sued the defendant for negligently entrusting a mini-bike to the defendant's twelve-year-old son. Although the defendant told his son never to ride the bike on the street, no further instructions were given concerning safety precautions or the rules of the road. However, the minor in *Honea* was also considered to be " 'below average compared to a normal child.' " 39 N.C. App. at 655, 251 S.E.2d at 723. We find sufficient difference between the North Carolina case and the matter currently at bar as to distinguish that ruling.

Accordingly, we find that there was no genuine issue as to Bud Wilmot's negligent entrustment of the ATV to Mathew and the trial court was correct in granting the motion for summary judgment. The assignment of error raised by the Mannings is therefore overruled.

In their cross-appeal, the Wilmots argue that the trial court erred during the jury instruction phase of the Mannings' trial against Mathew. Specifically, the Wilmots contend that the court failed to instruct the jury that the law relating to the assured clear distance between vehicles applied to motorcycles as well as cars.

The court instructed the jury on assured clear distance in the following manner:

"Now, in addition to having to exercise ordinary care for the safety of others, which both parties are responsible to do, the particular statutory, or traffic law which the plaintiff is alleged to have violated, is the assured clear distance law, and the Court will now address that particular law.

"It says no motorist may operate a vehicle at a greater speed than will permit him to bring it to a complete stop within the assured clear distance ahead. That is, the distance between the car he is operating and a visible object in his path of travel. This provision of law is known as the assured clear distance rule.

"As the motorist proceeds the assured clear distance constantly changes. It is measured at any moment by the distance between the motorist's car and the range of his headlights ahead in the same lane in which the motorist is proceeding.

"However, if you find that a motorist's assured clear distance ahead was suddenly cut down or reduced by the entrance of the Wilmot boy into the path or lane of travel and within such assured clear distance ahead, then you are instructed that the assured clear distance law does not apply.

"If you find the assured clear distance rule was violated, then you must find that such motorist, the plaintiff driver in this case, was negligent as a matter of law."

The Wilmots take the position that the court's use of the term "car" rather than motorcycle confused the jury and led the jury to believe that the assured clear distance law did not apply to Manning who was operating a motorcycle rather than a car.

Clearly, the assured clear distance law is applicable to motorcycles as well as to automobiles. See, *e.g., Cincinnati* v. *Robben* (1982), 8 Ohio App. 3d 203. In addition, "[a] jury instruction must be considered in its entirety and, ordinarily, reversible error does not consist of misstatements or ambiguity in a part of the instruction. * * * " *Sech* v. *Rogers* (1983), 6 Ohio St. 3d 462, 464.

The trial court used the standard jury instruction for the assured clear distance law. 2 Ohio Jury Instructions (1985), Section 225.21. It was also pointed out to the jury that Manning was alleged to have violated this particular traffic law. The instruction sets forth the law in terms that an individual may not operate a *vehicle* at such a speed that will not permit him to bring it to a complete stop within the assured clear distance ahead. The instruction then uses the term "car" in defining what constitutes or comprises an assured clear distance. Taking the jury instruction as a whole, we do not find error in the trial court's failure to substitute "motorcycle" for "car." The instruction is sufficient to inform the jury that Manning, in operating his motorcycle in such a fashion as to collide with Mathew's ATV, was charged with violating the law requiring an assured clear distance between a motorist and a visible object in his path of travel.

Accordingly, the assignment of error raised in the cross-appeal is not well-taken and the judgment of the trial court is affirmed in all respects.

*Judgment affirmed.*

HENDRICKSON and CASTLE, JJ., concur.

CASTLE, J., retired, of the Twelfth Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Constitution. .