**Robert A. REAGAN; Barbara Reagan, Appellants,**

v.

**HI–SPEED CHECKWEIGHER COMPANY, INC., a New York corporation, Appellee.**

No. 93–2394.

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1994.

Decided July 8, 1994.

Patrick W. Parmater, Minnetonka, MN, argued (Alvin O. Boucher, on the brief), for appellant.

Duane H. Ilvedson, Fargo, ND, argued, for appellee.

Before HANSEN, Circuit Judge, HEANEY and JOHN R. GIBSON, Senior Circuit Judges.

HEANEY, Senior Circuit Judge.

In this diversity action Robert Reagan seeks to recover damages for injuries he sustained while he was employed as a packing-line operator at J.R. Simplot Co.'s ("Simplot") potato processing plant in Grand Forks, North Dakota. Reagan was injured when a checkweigher, designed and manufactured by Hi–Speed Checkweigher Co., Inc., ("Hi–Speed") malfunctioned, triggering a series of events that resulted in an injury to his groin area. Reagan sued Hi–Speed in negligence and strict liability in district court, alleging that the checkweigher was defective and that it proximately caused his injury. Hi–Speed filed a motion for summary judgment, and the court granted the motion on the grounds that Reagan failed to provide admissible evidence that the checkweigher was defective and that Hi–Speed's conduct was not a proximate cause of Reagan's injury. Reagan appeals the summary judgment in Hi–Speed's favor. We affirm.

## I.

Reagan was injured on April 15, 1987, when a kicker plate engaged and struck him. At the time of the accident, he was attempting to free a box of french fries that had become stuck in machinery that accepts boxes of french fries that have been rejected from the main packaging line at Simplot's plant. The assembly line is designed to permit boxes to move along a conveyor belt onto the checkweigher, or scale, that automatically weighs the boxes and rejects those that are not within the range of thirty to thirty-six pounds. Boxes weighing within this range continue down the conveyer belt to be sealed and readied for loading; those of improper weight are moved off of the main line by a mechanical device (a rejector) that rejects the boxes onto a receiving table. This action trips a switch engaging a kicker plate, which propels the rejected boxes down a ramp (a runaway) that is parallel to the conveyor belt. An alarm sounds every time the checkweigher rejects a box.

Reagan, whose job it was to check the operation of the entire production line, was alerted to the possibility of a malfunction in the checkweigher by the alarm which sounded continuously. When Reagan reached the checkweighing area, every box that crossed the checkweigher was being rejected from the main line. Twenty-five boxes had been rejected, causing a backlog of boxes on the receiving table and the runaway. Reagan was leaning over the kicker plate to free one of several boxes caught between the rejector and the kicker plate when the checkweigher rejected another box, which caused one of the boxes to hit the switch activating the kicker plate. The kicker plate struck Reagan's groin area, causing swelling and permanent damage to his testicles. After the accident, workers weighed the rejected boxes on a mobile scale and determined that each was of proper weight and was thus improperly rejected.

Hi–Speed designed and manufactured the checkweigher, Model CS–80K–CS, and sold it to Simplot in 1982. Simplot installed the checkweigher itself, however, and had ultimate control over the design and layout of the entire production line. Neither the rejector nor any of the equipment in the receiving area (e.g., the kicker plate, receiving table, and runaway) was designed, manufactured, or installed by Hi–Speed. The apparent source of malfunction of the checkweigher was a thermostat mounted inside a control box, which, in addition to the scale, were the only two components supplied by Hi–Speed.

## II.

Where strict liability or negligent design, or both, are alleged, a plaintiff must prove that there was a defect in the defendant's product or its design that was a proximate cause of his or her injuries. See *Oanes v. Westgo, Inc.*, 476 N.W.2d 248, 253 n. 5 (N.D.1991); *Morrison v. Grand Forks Hous. Auth.*, 436 N.W.2d 221, 223 (N.D.1989); *Mauch v. Manufacturers Sales & Serv., Inc.*, 345 N.W.2d 338, 347 (N.D.1984). Under North Dakota law, which we must apply in this case, a plaintiff cannot prevail "simply by proving a product's defect and causation of the injury which the plaintiff has suffered," *Kaufman v. Meditec, Inc.*, 353 N.W.2d 297, 301 (N.D.1984); he or she must prove that the product was unreasonably dangerous, *id.*, e.g., "dangerous to an extent beyond which

would be contemplated by the ordinary and prudent buyer, consumer, or user ... considering the product's characteristics, propensities, risks, dangers, and uses...." *See* N.D. Cent.Code § 28–01.1–05 (1991); *Wilson v. General Motors Corp.*, 311 N.W.2d 10, 15 (N.D.1981).

The district court concluded that there was no admissible evidence establishing, or tending to establish, the existence of a defect in the checkweigher or its design. *Reagan v. Hi–Speed Co.*, No. A2–90–203, 1993 WL 733715, mem. order at 5 (D.N.D. April 20, 1993). Specifically, it rejected the opinion of an expert witness that the checkweigher was defective, finding that the expert's use of the word "may" in describing a possible reason for the malfunction was impermissible "[s]peculation and surmise [that] cannot form the basis of an 'expert opinion' as envisaged by Fed.R.Evid. 701."[1] *Id.* at 6.

■ We need not render an opinion on the court's conclusion that the checkweigher was not defective, because we find that even assuming it was defective, Reagan failed to make the requisite showing of proximate cause and therefore "failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Summary judgment is proper when the pleadings, affidavits, and other court filings show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Moore v. Webster*, 932 F.2d 1229, 1231 (8th Cir.1991) (quoting *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11). This court reviews de novo the legal conclusion that no genuine issue existed for trial. *Id.* at 1232.

■ Under Restatement (Second) Torts, § 402A, a seller can only be held liable in strict liability where there is proof that an unreasonably dangerous defective condition of the seller's product proximately caused the plaintiff's injuries. Likewise a seller can only be held liable for negligence if his negligence was a proximate cause of the injury. *See Andrews v. O'Hearn*, 387 N.W.2d 716, 726 (N.D.1986). One of the tests of proximate cause is whether the defendant could have reasonably foreseen the consequence of his negligence. *Moum v. Maercklein*, 201 N.W.2d 399, 403 (N.D.1972). Stated otherwise, proximate cause "arises when the injury is the natural and probable result of the negligent act or omission and must be of such character as an ordinarily prudent person ought to have foreseen as likely to occur...." *Id.* at 402. Thus, an injury that could not have been foreseen or reasonably anticipated as a probable result of the act is not actionable. *Id.* at 403.

■ Reagan argues that the series of events that were triggered by the malfunctioning checkweigher—the backlog of boxes on the receiving table and runaway, which caused several boxes to get jammed between the rejector and the kicker plate, which prompted Reagan to attempt to free one of the jammed boxes, which resulted in the kicker plate being activated—were reasonably foreseeable, or, more precisely, a "natural and continuous sequence, unbroken by a controlling, intervening cause." Reagan Br. at 13. It is not necessary, he argues, that Hi–Speed foresee the precise injury; it is enough that it "could have foreseen the infliction of any kind of crushing, blunt injury by its rejector." *Id.* We disagree.

The undisputed facts lead us to conclude that Hi–Speed could not have reasonably anticipated Reagan's injury as a probable result of a malfunction in the checkweigher. Hi–Speed had no knowledge of the intricacies or design of the production line, particularly that portion of the line in which the checkweigher was incorporated. Although it

---

1. Rule 702 of the Federal Rules of Evidence, not Rule 701, pertains to expert testimony. We assume this is the rule to which the court refers.

clearly knew that the checkweigher would be incorporated in an assembly line (indeed it was designed for this purpose), it had not been presented with schematic drawings or other information detailing precisely how the checkweigher would be assimilated with the other equipment in the line. It had no knowledge, for instance, of the dimensions of the receiving table and the kicker plate (the immediate source of Reagan's injury), or of the width and length of the runaway—all of which were designed, manufactured, and installed by Simplot or some other party.

Reagan argues that Hi–Speed knew the layout of the production line because Hi–Speed inquired as to which direction—right or left—the rejected boxes would be moved off of the line and was informed by Simplot that the boxes would be rejected off to the right. Summ. Judgment Tr. at 29. We are unconvinced that Simplot's response, apart from imparting general information that Hi–Speed apparently requested of all of its customers, in any way alerted Hi–Speed to the precise layout of the production line. The most that can be said about what Hi–Speed knew is that (to quote Reagan's attorney at oral argument) "its system [the checkweigher] is the electronic final determination if everything before [it] has worked."

Having found that Hi–Speed, as a matter of law, could not have reasonably anticipated Reagan's injury as a probable result of a malfunction in the checkweigher, we find that the district court properly granted summary judgment in Hi–Speed's favor. Accordingly, its decision is affirmed.