2003 ND 129

**Katie COLLETTE, individually and as the surviving wife and representative of the heirs at law and estate of Joshua Collette, deceased, Plaintiff and Appellant,**

v.

**Robert CLAUSEN, Defendant and Appellee.**

No. 20030026.

Supreme Court of North Dakota.

Aug. 20, 2003.

Kim E. Brust, Conmy Feste, Ltd., Fargo, ND, for plaintiff and appellant.

James D. Erickson, Erickson Law Office, Moorhead, MN, for defendant and appellee.

KAPSNER, Justice.

[¶ 1] Katie Collette appeals from a summary judgment dismissing with prejudice her action against Robert Clausen ("Clausen") seeking damages for wrongful death and pain and suffering arising from a snowmobile accident. We conclude Katie Collette failed to present sufficient evidence following a motion for summary judgment to establish each essential element of her claims for negligent entrustment and negligent failure to warn. We affirm.

I

[¶ 2] In January 1999, Joshua Collette and Clausen decided to go snowmobiling on the Red River ("the river") in Grand Forks, North Dakota. Joshua Collette and Clausen had gone snowmobiling together previously in the winter of 1998, but they did not snowmobile on a river. Joshua Collette, who was 21 years old at the time of the accident, had operated a snowmobile on at least three other occasions.

[¶ 3] Clausen owned and provided to Joshua Collette the snowmobile Joshua Collette was driving at the time of the accident. Clausen selected the route the two men were planning to snowmobile. Clausen stated he planned to snowmobile with Joshua Collette downstream on the river to get to the area where the two men had gone snowmobiling together the previous winter. Clausen acknowledged the limited visibility of the Riverside dam ("the dam") while traveling downstream makes it dangerous to approach the dam on a snowmobile at high speeds; however, Clausen testified there was an orange buoy in the snow on the river "[p]robably 150 yards" from the top of the dam. Clausen stated that although he had driven his snowmobile on the river many times and was familiar with the route they were going to snowmobile, Clausen did not know whether Joshua Collette had previously driven a snowmobile on the river or if he had been near the dam prior to the accident. Katie Collette indicated during her deposition that Joshua Collette had been in the area of the dam with her on one other occasion during the fall or early winter to look for a rock for a local radio contest. Katie Collette explained that they looked for the rock in the open water under the dam.

[¶ 4] Clausen testified on the day of the accident he and Joshua Collette unloaded the snowmobiles near the Red Lake River and the Red River by Minnesota Avenue. Clausen stated the dam was located at least one and a half miles downstream from where they unloaded the snowmobiles. Clausen's deposition indicates that before he and Joshua Collette began snowmobiling on the river, he "had told Josh that when [they] got out on the river [he] was going to stop and relieve [himself] before [they] went on [their] ride." Clausen testified he pulled over and stopped his snowmobile "a good mile" from the dam, but Joshua Collette continued downstream on the river at well over 60 mph and never slowed down or stopped to wait for Clausen. Joshua Collette drove his snowmobile past an orange buoy located upstream from the dam, over the dam, and into the open water. Joshua Collette drowned in the river before he could be rescued.

[¶ 5] Katie Collette, the surviving spouse of Joshua Collette, brought an action against Clausen for wrongful death and pain and suffering. Katie Collette contends Clausen was negligent in entrusting his snowmobile to Joshua Collette and

in failing to warn Joshua Collette of the location and danger of the dam. The district court granted Clausen's motion for summary judgment, concluding Clausen was entitled to summary judgment because "[n]o duty existed between the two parties" and "[w]ithout a duty, there can be no negligence claim." Katie Collette appeals, asserting genuine issues of material fact exist concerning the issues of negligent entrustment and failure to warn.

## II

[¶ 6] In *Luallin v. Koehler,* 2002 ND 80, ¶ 7, 644 N.W.2d 591, this Court said:

> Summary judgment is a procedure for the prompt and expeditious disposition of a controversy without trial if either party is entitled to judgment as a matter of law, and if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving factual disputes would not alter the result.

The party seeking summary judgment has the burden of showing that there is no genuine issue of material fact and that, under applicable principles of substantive law, the party is entitled to judgment as a matter of law. *Skjervem v. Minot State Univ.,* 2003 ND 52, ¶ 4, 658 N.W.2d 750.

[¶ 7] We have outlined the duty of a party opposing a motion for summary judgment:

> Although the party seeking summary judgment has the burden of showing that there is no genuine issue of material fact, the party resisting the motion may not simply rely upon the pleadings. Nor may the opposing party rely upon unsupported, conclusory allegations. The resisting party must present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record by setting out the page and line in depositions or other comparable documents containing testimony or evidence raising an issue of material fact.

> In summary judgment proceedings, neither the trial court nor the appellate court has any obligation, duty, or responsibility to search the record for evidence opposing the motion for summary judgment. The opposing party must also explain the connection between the factual assertions and the legal theories in the case, and cannot leave to the court the chore of divining what facts are relevant or why facts are relevant, let alone material, to the claim for relief.

*Anderson v. Meyer Broad. Co.,* 2001 ND 125, ¶ 14, 630 N.W.2d 46 (quoting *Peterson v. Zerr,* 477 N.W.2d 230, 234 (N.D.1991)).

[¶ 8] "Summary judgment is appropriate against a party who fails to establish the existence of a factual dispute on an essential element of his claim and on which he will bear the burden of proof at trial." *Kimball v. Landeis,* 2002 ND 162, ¶ 5, 652 N.W.2d 330 (citing *Dahlberg v. Lutheran Soc. Servs.,* 2001 ND 73, ¶¶ 11, 42, 625 N.W.2d 241). When no pertinent evidence on an essential element is presented to the district court in resistance to a motion for summary judgment, it is presumed no such evidence exists. *Id.* (citing *Van Valkenburg v. Paracelsus Healthcare Corp.,* 2000 ND 38, ¶ 27, 606 N.W.2d 908).

[¶ 9] Whether a district court properly granted summary judgment is a question of law which we review de novo on the entire record. *Skjervem,* at ¶ 7 (citing *Wahl v. Country Mut. Ins. Co.,* 2002 ND 42, ¶ 6, 640 N.W.2d 689).

## III

[¶ 10] Katie Collette argues the district court erred when it summarily dismissed

with prejudice her negligence claim against Clausen.

[¶ 11] In a negligence case, a plaintiff must show "a duty on the part of an allegedly negligent person to protect the plaintiff from injury, a failure to discharge the duty, and a resulting injury proximately caused by the breach of the duty." *Diegel v. City of West Fargo*, 546 N.W.2d 367, 370 (N.D.1996) (citations omitted). If the defendant has no duty, there is no actionable negligence. *Id.*

[¶ 12] Negligence actions are ordinarily not appropriate for summary judgment; however, whether a duty exists is generally a preliminary question of law for the court to decide. *Hurt v. Freeland*, 1999 ND 12, ¶ 9, 589 N.W.2d 551. "If the existence of a duty depends upon factual determinations, the facts must be determined by the fact finder. Issues of fact, however, may become issues of law for the court, if reasonable persons could reach only one conclusion from the facts." *Id.* (citations omitted).

[¶ 13] Katie Collette contends Clausen negligently entrusted Joshua Collette with a snowmobile which Clausen knew or had reason to know would be dangerous to operate because of Joshua Collette's inexperience. Katie Collette relies upon the Restatement (Second) of Torts to support her argument:

§ 390 Chattel for Use by Person Known to Be Incompetent

One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use,

is subject to liability for physical harm resulting to them.

Restatement (Second) of Torts § 390 (1965). This Court has recognized a cause of action for negligent entrustment and has not only applied the doctrine of negligent entrustment to cases involving motor vehicles, but also "to other chattels which, if placed in the hands of an incompetent or inexperienced person, present a likelihood of unreasonable risk of harm to third persons." *Barsness v. General Diesel & Equip. Co., Inc.*, 383 N.W.2d 840, 842 (N.D.1986).

[¶ 14] In this case, the undisputed evidence presented to the district court indicates Clausen owned and supplied the snowmobile which Joshua Collette was driving at the time of the accident. The significant issue is whether any evidence exists to establish whether Clausen knew or had reason to know Joshua Collette would likely use the snowmobile in a manner involving unreasonable risk of physical harm to himself or others. Although the party seeking summary judgment has the burden of showing there is no genuine issue of material fact, the party resisting the motion has the burden to present competent admissible evidence by affidavit or other comparable means which raises an issue of material fact. *Kimball v. Landeis*, 2002 ND 162, ¶ 5, 652 N.W.2d 330. "Summary judgment is appropriate against a party who fails to establish the existence of a factual dispute on an essential element of his claim and on which he will bear the burden of proof at trial." *Id.* (citing *Dahlberg v. Lutheran Soc. Servs.*, 2001 ND 73, ¶¶ 11, 42, 625 N.W.2d 241).

[¶ 15] Clausen asserted in his motion for summary judgment that he is entitled to judgment as a matter of law on the issue of negligent entrustment because there are no factual disputes. Clausen argued there are no facts in the record

suggesting Clausen knew or should have known that Joshua Collette was likely to use the snowmobile in a manner involving unreasonable risk of physical harm. Clausen noted Joshua Collette had driven a snowmobile before the accident and there are no facts indicating Joshua Collette had trouble operating the snowmobile in the past or prior to the accident. Katie Collette submitted a brief in opposition to Clausen's motion for summary judgment, arguing the fact that Clausen gave a statement characterizing Joshua Collette as "a very inexperienced snowmobile operator," alone, raises a genuine issue of material fact.

[¶ 16] Both Clausen and Katie Collette had been deposed and their depositions were before the district court in its consideration of the motion for summary judgment. Clausen testified Joshua Collette told him he had previously operated a snowmobile in the Grafton area. Clausen also stated he and Joshua Collette had gone snowmobiling together one time in the winter prior to the accident. Katie Collette testified that, in addition to snowmobiling with Clausen, Joshua Collette had driven a snowmobile twice in the preceding winter with a friend, Judson Lott. Katie Collette stated she was inside the house at the time Joshua Collette drove Lott's snowmobile. When Katie Collette was asked if Joshua Collette expressed any concerns or trouble operating the snowmobile, Katie answered, "No." Clausen was also questioned about whether he had any concerns about the way Joshua Collette operated the snowmobile when the two men had been snowmobiling:

> Q. Do you remember if there was anything about the way that Josh operated the snowmobile that raised a concern in your mind about whether he knew how to operate a snowmobile or followed appropriate safety precautions?

A. No.

Clausen further testified he at least showed Joshua Collette the controls on the snowmobile when he went snowmobiling with Joshua Collette in the winter prior to the accident. Clausen indicated at his deposition that he believed Joshua Collette was familiar with the snowmobile controls. Katie Collette did not present any evidence to the district court suggesting Joshua Collette did not know how to properly operate a snowmobile or that Clausen knew or should have known Joshua Collette had previously operated a snowmobile in a dangerous manner.

[¶ 17] One of the essential elements of a claim for negligent entrustment is that the injured party must demonstrate the supplier of a chattel knew or had reason to know the entrustee would likely use the chattel in a manner involving unreasonable risk of physical harm. Restatement (Second) of Torts § 390 (1965). Throughout the Restatement (Second) of Torts, the phrase "reason to know" means "the actor has information from which a person of reasonable intelligence or of the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists." Restatement (Second) of Torts § 12(1) (1965).

[¶ 18] Katie Collette relies on this Court's decision in *Barsness v. General Diesel & Equip. Co., Inc.*, 383 N.W.2d 840 (N.D.1986), to support her argument that the district court improperly granted summary judgment on the issue of negligent entrustment. In *Barsness*, at 844–45, this Court concluded the district court erred in granting summary judgment on the issue of negligent entrustment because there was sufficient evidence presented from which different inferences could be drawn

from the evidence presented regarding the experience of a crane operator and the foreseeability of the misuse of the crane.

[¶ 19] The district court, in distinguishing this case from the facts in *Barsness*, noted Joshua Collette "did know how to properly operat[e] the snowmobile in the manner that it was being used for at the time of the accident." The evidence Katie Collette presented to the district court in which she argues raised a genuine issue of material fact was Clausen's statement, given to a deputy immediately after the accident, characterizing Joshua Collette as an inexperienced snowmobile operator. This evidence alone does not establish the existence of a factual dispute on whether Clausen knew or had reason to know Joshua Collette would likely use the snowmobile in a manner involving unreasonable risk of physical harm to himself or others. The evidence in the record indicates Joshua Collette was 21 years old and had some experience operating a snowmobile. Katie Collette did not present evidence demonstrating Clausen knew Joshua Collette was incompetent or unable to safely operate the snowmobile nor did she present any evidence from which one could infer that Clausen had reason to know Joshua Collette would likely use the snowmobile in a manner involving unreasonable risk of physical harm and continue downstream at 60 mph once Clausen stopped his snowmobile. Katie Collette failed to present competent admissible evidence to the district court to establish the existence of a factual dispute on an essential element of her negligent entrustment claim in which she would bear the burden of proof at trial.

[¶ 20] The record is devoid of any evidence which demonstrates that, prior to the accident, Clausen knew or had reason to know Joshua Collette was likely to continue downstream after Clausen stopped his snowmobile and use the snowmobile in a manner involving unreasonable risk of physical harm to himself. The district court properly granted summary judgment to Clausen on the claim of negligent entrustment. *See* Restatement (Second) of Torts § 390 (1965) (subjecting a supplier of a chattel to liability for physical harm if the supplier "knows or has reason to know" the entrustee will "be likely … to use the chattel in a manner involving unreasonable risk of physical harm"); *see also Manning v. Wilmot*, 29 Ohio App.3d 94, 503 N.E.2d 206, 209 (1985) (finding no negligent entrustment claim when there is no evidence to indicate father had actual knowledge his son was unable to safely operate the ATV and there is nothing to indicate father should have been aware of his son's inability to safely operate the ATV).

## IV

[¶ 21] Katie Collette argues the district court erred in granting summary judgment and dismissing with prejudice her claim for negligent failure to warn. Katie Collette contends Clausen was negligent in failing to warn Joshua Collette of the existence of the dam located downstream on the river.

[¶ 22] Katie Collette relies on the principles set out in § 388, Restatement (Second) of Torts (1965), to support her argument that Clausen had a duty to warn of danger:

§ 388   Chattel Known to Be Dangerous for Intended Use

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a

person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

This Court has previously recognized a cause of action for negligent failure to warn and has cited the principles set out in § 388, Restatement (Second) of Torts (1965), as appropriately summarizing the elements for negligent failure to warn. *See Barsness v. General Diesel & Equip. Co., Inc.*, 383 N.W.2d 840, 845 (N.D.1986). The Court in *Barsness* noted, however, by applying the principles outlined in § 388, Restatement (Second) of Torts (1965), it was not creating a new cause of action, but merely clarifying existing basic negligence principles placed within the context of failure to warn. 383 N.W.2d at 845 n. 5. Although the cases alleging negligent failure to warn often involve manufacturers of products, this Court has stated "other suppliers of chattels should be held liable for their negligent failure to warn of dangerous propensities of a chattel supplied to another, as outlined in Section 388 [of the Restatement (Second) of Torts.]" *Id.* at 845.

[¶ 23] Katie Collette argues Clausen, as the supplier of the snowmobile and the person with superior knowledge, had a duty to inform Joshua Collette of the upcoming dam. Clausen moved for summary judgment on this issue asserting Joshua Collette was aware of the existence of the dam and any duty of care did not extend to a duty to warn Joshua Collette of the obvious risks of dams or open water on a

river. Katie Collette resisted Clausen's motion for summary judgment, arguing "[g]iven Joshua's inexperience and the limited visibility on the river, genuine issues of material fact exist as to whether Clausen had reason to know that the snowmobile would be dangerous while Joshua was driving north on the Red River towards the dam and open water."

[¶ 24] A party opposing a motion for summary judgment has the burden to establish the existence of a factual dispute on an essential element of her claim and on which she will bear the burden of proof at trial. *Kimball v. Landeis*, 2002 ND 162, ¶ 5, 652 N.W.2d 330 (citing *Dahlberg v. Lutheran Soc. Servs.*, 2001 ND 73, ¶¶ 11, 42, 625 N.W.2d 241). In order to establish a claim for negligent failure to warn, a party must satisfy all three subsections under § 388, Restatement (Second) of Torts (1965). *Erickson v. Prudential Prop. & Cas. Ins. Co.*, 166 Wis.2d 82, 479 N.W.2d 552, 555 (App.1991); *see also Barsness*, at 845 (listing factual determinations which must be resolved before the existence of a duty to warn can be resolved). Subsection (a) of § 388, Restatement (Second) of Torts (1965), states the supplier must "know[ ] or ha[ve] reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied." The comments following § 388 of the Restatement (Second) of Torts explain:

The duty which the rule stated in this Section imposes upon the supplier of a chattel for another's use is to exercise reasonable care to give to those who are to use the chattel the information which the supplier possesses, and which he should realize to be necessary to make its use safe for them and those in whose vicinity it is to be used. This information enables those for whom the chattel is supplied to determine whether they shall accept and use it.

Restatement (Second) of Torts § 388 cmt. g (1965).

[¶ 25] In this case, Katie Collette argued to the district court that Clausen was negligent in failing to provide adequate warning to Joshua Collette concerning the dangers associated with operating the snowmobile on the river in the area selected by Clausen. Clausen's deposition was before the court in its consideration of the motion for summary judgment. Clausen testified he selected the route which the two men were going to drive the snowmobiles on the day of the accident. Clausen estimated he had taken the route he planned to drive with Joshua Collette "probably a hundred" times. Clausen testified he knew of the dangers of operating a snowmobile on ice. Clausen stated at his deposition: "There's always a danger of operating [a snowmobile] on ice. Ice is never totally safe." Clausen recognized one of the dangers associated with operating a snowmobile on ice is the ice could break and a person could fall into the water. Clausen also acknowledged that on a frozen river there may be water moving underneath the ice. Although the evidence in the record indicates Clausen acknowledged the dangers of operating a snowmobile on the river, a significant issue and essential element of a failure to warn claim is whether Clausen had reason to know Joshua Collette would not realize the apparent dangers of operating a snowmobile on a river.

[¶ 26] Section 388, Restatement (Second) of Torts (1965), subjects a supplier of a chattel to liability only if the supplier "has no reason to believe" the user of the chattel will realize its dangerous condition. Restatement (Second) of Torts § 388(b) (1965). This duty to exercise reasonable care to inform a user of a chattel's dangerous character exists "if, but only if, [the supplier] has no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved." Restatement (Second) of Torts § 388 cmt. k (1965). A "[d]uty to warn is predicated upon the understanding that individuals who have superior knowledge of dangers posed by a hazard must warn those who lack similar knowledge; when an individual is already aware of danger, a warning is not necessary." 65 C.J.S. *Negligence* § 74 (2000). Since "[t]he duty to warn others of a particular peril is not absolute," the necessity to warn

depends, among other things, upon the age, intelligence, and information of those to whom the warning might be due. There is no duty to warn someone who has actual notice and appreciation of the danger. There is no duty to warn of commonly known risks, and no duty to warn of dangers already understood and appreciated. There is no duty to warn of the obvious.

57A Am.Jur.2d *Negligence* § 388 (1989) (footnotes omitted).

[¶ 27] This Court has recognized in certain circumstances the open and obvious nature of danger may obviate the need to warn of danger. *See Gullickson v. Torkelson Bros., Inc.*, 1999 ND 155, ¶ 8, 598 N.W.2d 503 (stating an "employer need not, however, warn of dangers known to the employee or obvious to and fully appreciated by the employee"); *Morrison v. Grand Forks Hous. Auth.*, 436 N.W.2d 221, 229 (N.D.1989) (concluding "the danger of removing the battery from a battery-powered smoke detector, and leaving it out, is, as a matter of law, obvious to the reasonable and prudent user of such smoke detector" and the defendant "had no duty to warn [the plaintiffs] that the battery-powered smoke detector would not operate without a battery"). *But see Butz v. Werner*, 438 N.W.2d 509, 512 (N.D.1989) (concluding the district court did not err in

failing to rule as a matter of law that the open and obvious nature of the dangers associated with the Super Tube, an inner tube which can be pulled behind a boat, obviated any need for warnings).

[¶ 28] Other courts have addressed the duty of care owed to a person engaging in a recreational activity when the injured party was familiar with the dangers or of sufficient intelligence to appreciate the risks. In *Weaver v. Trackey*, 272 A.D.2d 705, 707 N.Y.S.2d 530, 532–33 (N.Y.App. Div.2000), the court concluded the defendants lacked any duty to the plaintiff finding:

> It is obvious that the risk of death by drowning by boarding a wave runner while clad in a winter jacket, flannel shirt, jeans and workboots (but without a life jacket) to ride over the cold waters of the Hudson River on the last day of October is so inherently dangerous as to negate the existence of any duty of care owed by defendants to [plaintiff]. The record reflects [the plaintiff] was of sufficient intelligence to recognize and appreciate the risks which he assumed.

In another case, the Minnesota Court of Appeals reinstated the jury verdict apportioning fault to the plaintiff, a passenger on a snowmobile, stating

> Evidence suggested [the plaintiff] was familiar with the hazards of careless snowmobile operation and appreciated dangers in a fall during that kind of activity. The record shows no evidence that [the plaintiff] protested or cautioned [the snowmobile driver] about his manner of driving even though [the plaintiff] stated that he momentarily lost his balance on the first of three successive jumps over the snowbanks bordering Marsh Street.

*Isker v. Gardner*, 360 N.W.2d 468, 470 (Minn.Ct.App.1985).

[¶ 29] Although difficult questions may arise concerning an actor's knowledge and previous experience, "it seems clear that, unless [the actor's] attention is legitimately distracted, the actor must give to his surroundings the attention which a standard reasonable person would consider necessary under the circumstances, and that he must use such senses as he has to discover what is readily apparent." W. Page Keeton et al., *Prosser and Keeton on Torts* § 32, 182 (5th ed.1984) (footnote omitted). In this case, the evidence before the district court indicates Joshua and Katie Collette moved to Grand Forks, North Dakota from Grafton, North Dakota in 1997. Joshua Collette was 21 years old and had some experience riding on a snowmobile. Katie Collette revealed that Joshua Collette had been in the area of the dam on at least one prior occasion looking for a rock "right down by the dam. In the open water under the dam." Katie Collette also indicated Joshua Collette knew of the dangers associated with riding a snowmobile on a river. When asked about Joshua Collette's concerns regarding snowmobiling on a river, Katie Collette explained:

Q. So you heard your husband and Judson talking, and you heard Judson say that he snowmobiled a lot on the river when he lived in Oakwood; is that right?

A. Yes.

Q. What else did you hear him say about snowmobiling on the river?

A. Judson told Josh—Josh said that he would never snowmobile on the river I believe he said at that time. Because he was scared of thin ice and open water. And Judson told him you just have to go really fast. So that if you hit thin ice you'll go over it instead of sinking into it.

Q. So you heard your husband express a concern that he was scared of thin ice and open water.

A. Yes.

Q. And that was in relation to snowmobiling on rivers, right?

A. Yes.

[¶ 30] Katie Collette argues to this Court that Clausen did nothing to assure himself it was safe for Joshua Collette to be operating the snowmobile when Clausen knew there was open water below the dam which made snowmobiling toward the dam dangerous. The district court noted Joshua Collette was aware of the existence of the dam on the river because he had visited it prior to the day of the accident. Collette knew he could encounter thin ice and open water on the river according to the evidence. The uncontradicted evidence presented to the district court indicates Joshua Collette was driving the snowmobile at well over 60 mph when he passed Clausen's snowmobile and headed downstream toward the dam. An orange buoy was positioned in the snow upstream from the dam. Clausen estimated the buoy was located approximately 150 yards from the dam. Clausen's deposition indicates he did not see any evasive action or any attempt by Joshua Collette to avoid driving over the dam and into the open water below. Katie Collette did not present any testimony to contradict Clausen's testimony. "[A]n individual will not be excused when the individual denies knowledge of the risk; and to this extent, at least, there is a minimum standard of knowledge, based upon what is common to the community." W. Page Keeton et al., *Prosser and Keeton on Torts* § 32, 184 (5th ed.1984).

It seems clear, however, that there are certain things which every adult with a minimum of intelligence must necessarily have learned: the law of gravity, the fact that fire burns and water will drown, that inflammable objects will catch fire, that a loose board will tip when it is trod on, the ordinary features of the weather to which he is accustomed, and similar phenomena of nature.

*Id.* at 183 (footnotes omitted).

[¶ 31] In this case, the evidence presented to the district court indicates Joshua Collette had been in the area of the dam prior to the accident. Katie Collette, as the party resisting the motion for summary judgment, had the burden to establish Clausen had reason to believe Joshua Collette would not realize the dangerous conditions. *See Kimball v. Landeis,* 2002 ND 162, ¶ 5, 652 N.W.2d 330 (stating summary judgment is appropriate if a party fails to establish the existence of a factual dispute on an essential element of his claim and on which he will bear the burden of proof at trial). Katie Collette failed to present evidence to the district court establishing Clausen knew or had reason to believe Joshua Collette would not recognize the dangers of snowmobiling on the river and the dangers of the dam. Clausen's deposition provided to the district court states Clausen "told [Joshua Collette] that when [they] got out on the river [he] was going to stop and relieve [himself] before [they] went on [their] ride." Clausen stated he pulled over and stopped his snowmobile "a good mile" from the dam, but Joshua Collette did not stop and wait for Clausen. Nothing in the record suggests Clausen knew or had reason to know Joshua Collette would continue downstream at a high rate of speed.

[¶ 32] A duty to warn is based on the understanding that individuals who have superior knowledge must warn those who lack similar knowledge. 65 C.J.S. *Negligence* § 74 (2000). In this case, the district court concluded Clausen was entitled to summary judgment because no duty

existed between the parties. The district court noted Joshua Collette had been to the dam prior to the accident and appreciated the risks of snowmobiling on the river. Katie Collette failed to meet her burden of proof to establish the existence of a genuine issue of material fact on an essential element of her case following a motion for summary judgment; therefore, the district court properly granted summary judgment to Clausen on the claim of negligent failure to warn.

## V

[¶ 33] Katie Collette failed to present sufficient evidence following a motion for summary judgment to establish each essential element of her claims for negligent entrustment and negligent failure to warn. The district court properly granted summary judgment to Clausen. We affirm.

[¶ 34] GERALD W. VANDEWALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN and DALE V. SANDSTROM, JJ., concur.