**Susan BURGAD a/k/a Susan Hubbard, Plaintiff,**

v.

**JACK L. MARCUS, INC., Defendant.**

**No. A1–03–138.**

United States District Court, D. North Dakota, Southwestern Division.

Nov. 24, 2004.

Theresa L. Zimmerman, Bismarck, ND, for Plaintiff.

Patrick W. Durick, Pearce & Durick, Bismarck, ND, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HOVLAND, Chief Judge.

Before the Court is the Defendant's Motion for Summary Judgment filed on August 30, 2004. On November 1, 2004, the Plaintiff filed a response opposing the motion. For the following reasons, the motion is granted.

## I. *BACKGROUND*

In July of 2001, the plaintiff, Susan Burgad, ordered a cotton/spandex sports bra from the defendant, Jack L. Marcus, Inc. (Marcus) catalog. The sports bra was shipped to Burgad on July 19, 2001. At that time Burgad was residing at the Missouri River Correctional Facility in Bismarck, North Dakota.

After receiving the sports bra, Burgad wore the bra outside without wearing a shirt. Burgad contends she exposed herself to the sun while wearing the sports bra without a shirt and was severely burned on both breasts. The record reveals that Burgad laid out in the sun while

wearing the black sports bra in temperatures exceeding 100 degrees. *See* Affidavit of Burgad, ¶ 3. Burgad sustained three small burns on her right breast varying in size from 1–3 centimeters. She sustained three similar burns on her left breast varying from 1–2 centimeters. In December of 2003, Burgad filed an action in Burleigh County in North Dakota for negligence, product liability, and failure to warn. On December 29, 2003, Marcus removed the action under 28 U.S.C. § 1441from Burleigh County to the United States District Court for the District of North Dakota.

## II. *STANDARD OF REVIEW*

It is well-established that summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Graning v. Sherburne County*, 172 F.3d 611, 614 (8th Cir.1999). A fact is "material" if it might effect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376 (8th Cir.1996). The moving party has the initial burden of demonstrating to the Court that there are no genuine issues of material fact. If the moving party has met this burden, the non-moving party cannot simply rest on the mere denials or allegations in the pleadings. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed. R.Civ.P. 56(e). A mere trace of evidence supporting the non-movant's position is insufficient. Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. *LEGAL DISCUSSION*

The North Dakota Supreme Court has "recognized that negligence and strict liability in tort are separate and distinct theories of products liability and that each theory has a different focus." *Oanes v. Westgo, Inc.*, 476 N.W.2d 248, 253 (N.D. 1991) (citing *Butz v. Werner*, 438 N.W.2d 509 (N.D.1989); *Mauch v. Mfrs. Sales & Service, Inc.*, 345 N.W.2d 338 (N.D.1984); *Day v. General Motors Corp.*, 345 N.W.2d 349 (N.D.1984)). Strict liability focuses on whether a product is defective and unreasonably dangerous, whereas negligence focuses on whether the manufacturer's conduct falls below the standard of reasonable care. *Crowston v. Goodyear Tire & Rubber Co.*, 521 N.W.2d 401, 406 (N.D.1994).

### A. *NEGLIGENCE*

■ In any negligence action the plaintiff has the burden of demonstrating (1) a duty, (2) a breach of that duty, (3) causation, and (4) damages. *Investors Real Estate Trust Properties, Inc. v. Terra Pacific Midwest, Inc.*, 686 N.W.2d 140, 144 (N.D. 2004). Burgad's negligence claim appears to be based on two theories: negligent design and negligent failure to warn.

■ In a negligent design claim, the manufacturer or seller is not liable absent proof that the product is defective. *Oanes v. Westgo, Inc.*, 476 N.W.2d 248, 253 (N.D. 1991). Therefore, one element of a negligent design claim is that the product is defective or unsafe. The plaintiff must prove that the defendant failed to use rea-

sonable care in designing the product and that failure resulted in a defective product.

The North Dakota Supreme Court has recognized a cause of action for "failure to warn" and has cited the principles set forth in Section 388 of the Restatement Second of Torts (1965), as summarizing the elements for negligent failure to warn. *Collette v. Clausen*, 667 N.W.2d 617, 624 (N.D.2003). That section provides as follows:

> § 388   Chattel Known to Be Dangerous for Intended Use
>
> One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
>
> > (a) knows or has reason to know that the chattel is or likely to be dangerous for the use for which it is supplied, and
> >
> > (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
> >
> > (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Restatement (Second) of Torts § 388 (1965). The North Dakota Supreme Court held that by applying the principles of the Restatement, the court was not creating a new cause of action but merely clarifying existing basic negligence principles within the context of failure to warn. *Collette v. Clausen*, 667 N.W.2d 617, 624 (2003) (citing *Barsness v. General Diesel & Equip. Co., Inc.*, 383 N.W.2d 840, 845 (N.D.1986)).

To support her claims, Burgad has submitted an "Analysis Report" completed by Chemir Analytical Services, a company based in Maryland Heights, Maryland. Chemir Analytical Services tested a sample of the sports bra worn by Burgad and a sample of an exemplar sports bra. The "Analysis Report" indicates the existence of different chemicals contained within the fabric of the sports bra. Burgad also submitted several Material Safety Data Sheets (MSDS) obtained over the Internet. The MSDS provide detailed information about chemicals, including toxicity and hazards associated with the particular chemical. Burgad then selected several of the chemicals found in the sports bras and submitted a MSDS for each chemical in an attempt to show negligence.

■ The basis for Burgad's "failure to warn" claim is not clear from the pleadings. In her complaint she states that "[t]he Defendant failed to warn the Plaintiff of the risks involved in exposing the bra to sunlight." Complaint, ¶ 21. A seemingly unrelated contention appears in Burgad's brief: "There were no warnings that the bra should be laundered prior to use." Yet another contention is that there were "no warnings of the existence of such chemicals or their potential for irritation or burning of the skin." The alleged design defect appears to be that the bra contained certain chemicals which individually or in combination caused the burning.

However, Burgad's claims of negligence appear to have several flaws. Most notably, under both theories, Burgad is required to prove negligence and that such negligence was the proximate cause of her injuries. The "Analysis Report" prepared by Chemir Analytical Services does not address the issues of duty, breach of duty, or causation. In order to circumvent the need to establish causation, Burgad contends that the doctrine of res ipsa loquitur should apply.

The North Dakota Supreme Court has provided insight into the doctrine of res ipsa loquitur:

> [A]lthough labeled a doctrine, res ipsa loquitur is not a rule of substantive law but is a principle of evidence. Negligence must be affirmatively proved, and will not be presumed merely from the occurrence of the accident or damages. However, negligence may be proved by circumstantial evidence, and the res ipsa doctrine is a form of circumstantial evidence.

*Robert v. Aircraft Investment Co., Inc.*, 575 N.W.2d 672, 674 (N.D.1998). The Supreme Court also explained how the doctrine operates:

> As applied in this State, res ipsa loquitur allows the fact-finder to draw an inference that the defendant's conduct was negligent if the following foundational fact are provided: (1) the accident was one which does not ordinarily occur in the absence of negligence; (2) the instrumentality which caused the injury was in the exclusive control of the defendant; and (3) there was no voluntary action or contribution on the part of the plaintiff.

*Id.* A plain reading of the doctrine reveals that Burgad's reliance upon the doctrine of res ipsa loquitur is misplaced. The instrumentality that allegedly caused the injuries (the sports bra) was not in Marcus's exclusive control. In addition, the accident is not one which does not ordinarily occur in the absence of negligence. It is also unclear whether the actions of Burgad may have contributed in some manner to cause the injuries, namely, sunbathing in a black sports bra in temperatures exceeding 100 degrees. In summary, the doctrine of res ipsa loquitor does not operate in Burgad's favor.

The record also reveals that Burgad is unable to establish and prove there was a breach of any standard of care, or that a design defect existed, due to the failure to retain an expert witness.[1] Marcus correctly cites the Eighth Circuit case of *Dancy v. Hyster Co.*, 127 F.3d 649 (8th Cir.1997), to support the proposition that expert testimony is required to set forth a claim of negligence in a products liability action. In *Dancy*, the plaintiff filed an action against a lift truck manufacturer for negligence and strict liability. After striking the plaintiff's expert under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the district court granted the defendant's motion for summary judgment on both claims and held that the plaintiff could not prevail without expert testimony. Drawing upon Arkansas case law, the Eighth Circuit held that "absent expert testimony, there is no basis for the jury to evaluate the actions of an ordinarily prudent person." *Id.* at 654; (citing *Skinner v. R.J. Griffin & Co.*, 313 Ark. 430, 855 S.W.2d 913, 915 (1993)); *see Anderson v. Raymond Corp.*, 340 F.3d 520, 524–25 (8th Cir.2003) (reaching the same decision and upholding summary judgment for claims of negligence, strict liability, and failure to warn due to lack of expert testimony under Arkansas law); *Erling v. American Allsafe Company*, No. 99–3403, 2000 WL 1247863, *1–2 (8th Cir. Sept.5, 2000) (upholding summary judgment as to negligent failure to warn, negligent design, and strict liability claims due to lack of expert testimony under North Dakota law).

---

**1.** Marcus contends that Burgad's evidence should be excluded because it was submitted after the deadline contemplated in the scheduling/discovery deadline. However, on October 4, 2004, the Court granted an extension until December 1, 2004, to file expert reports. *See* Docket No. 28. Burgad's evidence was submitted on November 1, 2004, which falls within the newly prescribed time limit.

It is undisputed that no witness, other than Burgad, has stated that Marcus breached any standard of care, failed to exercise reasonable care in the design and manufacture of the sports bra, or that the sports bra was defective, unsafe, or unreasonably dangerous. No witness, other than Burgad, has established a causal connection between any alleged design defect and the injuries sustained by Burgad. Following Eighth Circuit precedent, Burgad's claims of negligence are unable to survive summary judgment due to the lack of any expert testimony to support such claims. The Court finds that there are no genuine issues of material fact for a jury to resolve regarding the claims of negligence.

## B. *STRICT LIABILITY*

The North Dakota Supreme Court has also described the necessary elements for strict products liability:

In order to recover for injuries sustained as a result of a defective condition in a product, unreasonably dangerous to a consumer, the plaintiff must show by a preponderance of the evidence the product was defective in design or manufacture; the defect rendered the product unreasonably dangerous to the consumer; the defect existed when the product left the manufacturer; and the defect was a proximate cause of the plaintiff's injuries.

*Endresen v. Scheels Hardware and Sports Shop, Inc.*, 560 N.W.2d 225, 228 (N.D.1997) (citing *Kaufman v. Meditec, Inc.*, N.W.2d 297, 300 (N.D.1984)). The North Dakota Century Code defines and clarifies these elements:

No product may be considered to have a defect or to be in a defective condition, unless at the time the product was sold by the manufacturer or other initial seller, there was a defect or defective condition in the product which made the product unreasonably dangerous to the user or consumer

N.D. Cent.Code § 28–01.3–06. Section 28–01.3–01(3) of the North Dakota Century Code provides the definition of "unreasonably dangerous:"

"Unreasonably dangerous" means that the product is dangerous to an extent beyond which would be contemplated by the ordinary and prudent buyer, consumer, or user of that product in that community considering the product's characteristics, propensities, risks, dangers, and uses, together with any actual knowledge, training, or experience possessed by the particular buyer, user or consumer.

Under North Dakota law, "a plaintiff cannot prevail simply by proving a product's defect and causation of the injury which the plaintiff suffered." *Reagan v. Hi–Speed Checkweigher Co., Inc.*, 30 F.3d 947, 948 (8th Cir.1994) (citing *Kaufman v. Meditec, Inc.*, 353 N.W.2d 297, 301 (N.D. 1984)) (quotations omitted). The plaintiff must also prove that the product was unreasonably dangerous based on its condition at the time it left the manufacturer. The mere fact that an accident or incident occurred, standing alone, does not support a claim that a product was defective. As a general rule, a plaintiff is required to prove a product defect through an expert witness.

The Court finds that Burgad's strict liability claims suffer a similar fate as the claims of negligence. It is well-established that expert testimony is needed to prevail on a strict liability claim. *See Dancy v. Hyster Co.*, 127 F.3d 649 (8th Cir.1997). As previously noted, Burgad has made no showing that the sports bra was defective in design or manufacturer; that any such defect rendered the sports bra unreasonably dangerous to the user or consumer; that the defect existed when the sports bra left the manufacturer; or that the defect was a proximate cause of

the plaintiff's injuries. In the absence of any expert testimony to establish the critical elements of a strict liability claim, the claim must fail. Merely submitting a series of Material Safety Data Sheets (MSDS), standing alone, will not meet the minimal burden of proof nor create a factual dispute for the jury to resolve at trial. A mere statement in a MSDS which notes that a certain chemical has the capacity to cause injury is not sufficient to create a jury question. The effects of exposure to any chemical or hazardous substance will always be dependent upon the dose, the duration of exposure, the method and manner of exposure, personal traits and habits, and the presence of other chemicals, toxic or otherwise. Many of the chemicals identified in the "Analysis Report" from Chemir Analytical Services are chemicals commonly found in clothing and many other consumer goods. The mere presence of chemicals in a piece of clothing such as a sports bra, or the fact such chemicals may have the potential to cause injury or illness, is not sufficient, by itself, to establish liability or causation in a products liability action.

## IV. *CONCLUSION*

The Defendant Jack L. Marcus' Motion for Summary Judgment (Docket No. 18) is **GRANTED.**

**IT IS SO ORDERED.**